**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KAREN VANDERHOOF-FORSCHNER;
THOMAS E. FORSCHNER,
<u>Plaintiffs-Appellants,</u>

v.

EDWARD MCSWEEGAN,

No. 99-1615

<u>Defendant-Appellee,</u>

and

THE LYME DISEASE FOUNDATION,
INCORPORATED,
<u>Third Party Defendant.</u>

KAREN VANDERHOOF-FORSCHNER;
THOMAS E. FORSCHNER,
<u>Plaintiffs-Appellees,</u>

v.

EDWARD MCSWEEGAN,

No. 99-1616

<u>Defendant-Appellant,</u>

and

THE LYME DISEASE FOUNDATION,
INCORPORATED,
<u>Third Party Defendant.</u>

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-97-2450-WMN)

Argued: April 3, 2000

Decided: May 16, 2000

Before MICHAEL and TRAXLER, Circuit Judges, and Roger J. MINER, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Lee Martinez, THOMPSON, HINE & FLORY, L.L.P., Washington, D.C.; James Russell Schraf, LIPSHULTZ & HONE, CHARTERED, Silver Spring, Maryland, for Appellants. Veronica Sophia Parkansky, MORRISON & FOERSTER, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Danielle E. Berry, THOMPSON, HINE & FLORY, L.L.P., Washington, D.C.; Victor I. Weiner, LIPSHULTZ & HONE, CHARTERED, Silver Spring, Maryland, for Appellants. W. Stephen Smith, MORRISON & FOERSTER, L.L.P., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Karen Vanderhoof-Forschner and her husband Thomas E. Forschner (the "Forschners"), founders of the non-profit Lyme Disease Foundation ("LDF"), filed an action against Dr. Edward McSweegan, asserting claims of defamation and interference with business and contractual relations. McSweegan, who had been the program officer for the National Institutes of Health's Lyme disease program, filed a counterclaim against the Forschners and a third-party claim against

2

LDF, asserting claims of defamation and civil conspiracy. Cross-motions for summary judgment on liability resulted in a classic "dog-fall"[1]--the district court granted summary judgment against the Forschners on their claims and against McSweegan on his claims. The Forschners appealed the district court's decision, prompting McSweegan to file a cross-appeal. We affirm.

I.

Giving all involved the benefit of all appropriate inferences, the evidence presented in support of the motions for summary judgment tended to establish the following. The Forschners founded LDF after they became convinced that Karen's contracting of Lyme disease during her pregnancy caused the severe health problems suffered by their son. Karen, chairperson of LDF's Board of Directors, took her cause to the public. She made appearances on national television programs and was featured in articles appearing in national newspapers and magazines. Karen's work for LDF brought her in contact with various members of Congress, and she became a successful lobbyist, persuading officials to dedicate additional funds to Lyme disease research. Within a few short years, LDF had received sufficient donations and grants to hire a staff, which included her husband Tom as the foundation's Executive Director.

McSweegan's contact with the Forschners began when he was appointed as program officer for the Lyme disease program at the

---

[1] See **Ferrell v. Ashmore**, 507 So. 2d 691, 694 (Fla. Dist. Ct. App. 1987) ("In both cases, both the contractor and the owner lost their respective claims (in the vernacular, a `dogfall')."); Raybon v. Reimers, 226 S.E.2d 620, 621 n.1 (Ga. Ct. App. 1976) (defining"dogfall" as a "colloquialism . . . derived from wrestling where it signifies a draw or tie."); Dixon v. Dixon, 306 S.W.2d 879, 879 (Ky. 1957) ("This divorce action resulted in a dog-fall, to use a wrestling term. The Chancellor refused to grant a divorce to either . . . ."); McFarland v. Bruening, 185 S.W.2d 247, 250 (Ky. 1945) ("It is further contended that it was error . . . not to have given what is sometimes called the `dogfall' instruction; that is, that if the jury shall believe that both drivers were negligent and their concurrent negligence caused the accident and consequent injuries, they will not award damages either to the plaintiff or to the defendant.").

3

National Institutes of Health ("NIH"). McSweegan developed a negative opinion of the Forschners and LDF, and he questioned their views on "chronic Lyme disease" and the need for prophylactic antibiotic treatment of tick bites.

McSweegan began documenting his dealings with the Forschners and informally investigating LDF. He distributed to various media outlets documents in which he took issue with statements made by the Forschners or LDF and gave his own views on Lyme disease, the Forschners, and LDF. In June 1995, after being reprimanded by his superiors for his conduct, McSweegan was removed from his position as the Lyme disease program officer.

McSweegan nonetheless continued his campaign against the Forschners and LDF, which included Internet postings, e-mails, and anonymous mailings criticizing the Forschners and their foundation. McSweegan accused the Forschners of harassing NIH staff members and grantees, and he described LDF as "whacko." McSweegan also gave interviews to a reporter who eventually wrote several articles about the feud between McSweegan and the Forschners. In those interviews, McSweegan made his dislike of the Forschners and LDF crystal clear, essentially describing the Forschners as frauds.

While McSweegan was waging his battle, the Forschners were launching their own counter-assault, which included pressuring NIH to remove him from the Lyme disease program. In various Internet postings, the Forschners challenged McSweegan's views about them and their foundation, often referring to him as"a cowardly stalker," "the stalker," and "the LDF stalker." J.A. 639-40.

This battle of words gave rise to the present action. As to the defamation claims, the district court determined that all claims should be considered under the constitutional "actual malice" standard because all of the parties were limited public figures. **2** The court then concluded that none of the statements made by any of the parties were defamatory, but instead were "`heat-of-battle' hyperbole." J.A. 1075.

_____

**2** Karen Forschner and McSweegan conceded that, for purposes of this action, they were limited public figures. Thus, only the status of Tom Forschner was in dispute.

4

The court noted that the remaining claims--the Forschners' intentional interference with contract and business relations claim and McSweegan's conspiracy claim--were dependent upon a determination that defamation had occurred. Because the court rejected the defamation claims on both sides, it likewise rejected the remaining claims, thus ending the action.

II.

The Forschners contend on appeal that the district court erred in its conclusion that none of McSweegan's statements were defamatory. They also contend that the court erred in determining that Tom Forschner was a limited public figure. As to the dismissal of their intentional interference claim, they argue that if this Court reverses the district court's decision on the defamation claim, then the dismissal of the interference claim should likewise be reversed, given that the claim rises or falls with the defamation claim.

For his part, McSweegan makes it clear that he appealed to protect his right to assert his counterclaim only in the event that the Forschners prevailed on appeal. McSweegan contends that no meaningful distinction can be made between the statements made by him about the Forschners and the statements made by the Forschners about him. Thus, if this Court determines that his statements about the Forschners are defamatory, then McSweegan contends that we must likewise conclude that their statements about him are defamatory.

"[B]ecause defamation claims raise First Amendment issues, we have an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Wells v. Liddy, 186 F.3d 505, 520 (4th Cir. 1999) (internal quotation marks omitted), cert. denied, 120 S. Ct. 939 (2000). After thoroughly reviewing the entire record and considering the briefs and arguments of the parties, we agree with the district court that Tom Forschner is properly viewed as a limited public figure and that none of the statements at issue in this case can be reasonably understood as defamatory. Instead, the statements must be viewed as "rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by" McSweegan for the Forschners, and by the Forschners for McSweegan. Old

5

Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin, 418 U.S. 264, 286 (1974). Accordingly, we affirm on the reasoning of the district court.[3] See Vanderhoof-Forschner v. McSweegan, No. WMN-97-2450 (D. Md. April 2, 1999).

AFFIRMED

_____

[3] A federal court sitting in diversity must apply the choice-of-law rules of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Under Maryland law, defamation claims are governed by the law of the state where the defamatory statement was published. See Wells, 186 F.2d at 521-22. However, because the parties agree that Maryland law governs their claims, we need not inquire further into the choice-of-law questions. See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").

6